1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   THOMAS A. COLTHURST (CABN 99493)
3  Chief, Criminal Division

4  BARBARA J. VALLIERE (DCBN 439353)
   DAVID J. WARD (CABN 239504)
5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
7       Telephone: (415) 436-7200
        FAX: (415) 436-7230
8       david.ward@usdoj.gov
        barbara.valliere@usdoj.gov
9
   Attorneys for United States of America
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                        SAN FRANCISCO DIVISION
13

14 | UNITED STATES OF AMERICA,           ) NO. 20 CR-0108 JD
                                         )     13-CR-0079 JD
15 |         Plaintiff,                  )
                                         ) **UNITED STATES' SENTENCING**
16 |    v.                               ) **MEMORANDUM**
                                         )
17 | MARK DJANGO HICKS A/K/A KAFANI,     )
                                         )
18 |         Defendant.                  )
                                         )

U.S. SENTENCING MEMORANDUM           I
20 CR-0108 JD

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND AND OFFENSE CONDUCT ........................................................... 2

   A.   Hicks' Career in Fraud ............................................................................................ 2

   B.   The Charged Mortgage Loan Fraud Scheme ........................................................... 2

   C.   The Proceeds of the Fraud ....................................................................................... 4

III. DISCUSSION ................................................................................................................... 4

   A.   The Defendant's Sentencing Guidelines Calculation and Restitution ..................... 4

   B.   Legal Standard ......................................................................................................... 6

   C.   Sentencing Recommendation .................................................................................. 6

   D.   Restitution ............................................................................................................. 10

   E.   Forfeiture ............................................................................................................... 12

IV.  CONCLUSION .............................................................................................................. 12

# TABLE OF AUTHORITIES

**Federal Cases**

*United States v. Carty*, 520 F.3d 984 (9th Cir. 2008) .............................................................. 6

*United States v. Kimbrough*, 522 U.S. 85 (2007) ..................................................................... 6

**Federal Statutes**

18 U.S.C. § 1028A ............................................................................................................... 9, 10

18 U.S.C. § 1344 .................................................................................................................. 9, 10

18 U.S.C. § 1349 .................................................................................................................. 9, 10

18 U.S.C. § 3553 ......................................................................................................................... 6

21 U.S.C. § 841 ......................................................................................................................... 10

**State Statutes**

California Penal Code Section 530.5 ........................................................................................ 8

**Federal Rules**

Fed. R. Crim. P. 11 .................................................................................................................... 1

**U.S. Sentencing Guidelines**

U.S.S.G. § 2B1.1 ........................................................................................................................ 5

U.S.S.G. § 5K2.0 .................................................................................................................... 4, 5

## I.     **INTRODUCTION**

Mark Hicks is a career criminal and an unrepentant fraudster. He has more than a half dozen felony convictions for a series of increasingly sophisticated fraud schemes. He stands before this Court now having pled guilty to orchestrating a sprawling two-year loan fraud conspiracy in which he directed a team of criminals that stole $2 million from banks and lenders in a complex scheme involving stolen personal information, a web of false emails, phony phone numbers, and a series of fraudulent bank accounts. He impersonated his victims in over a dozen phone calls with banks, lending institutions, and gold dealers. Because Hicks was paralyzed and in a wheelchair from a 2013 shooting, he needed people to help execute the scheme. He turned to his half-brother Demarcus Hicks and co-defendant Dionysius Costello, using them to recruit their "workers," homeless drug addicts they used to impersonate victims to deceive notaries and at banks. *PSR* ¶ 16.

Over a two-year period, Hicks and his co-conspirators defrauded nine victims of almost $2 million, and would have obtained over $5 million had the financial institutions not caught several of his attempts. Hicks used the stolen funds to buy gold bars and coins, which his co-conspirators sold for cash. Over $400,000 of the illicit gains were recovered from a safe deposit box controlled by Hicks' mother and sister. The rest - over $1.5 million in stolen funds - remains unaccounted for.

On March 21, 2022, Hicks pled guilty pursuant to a Fed. R. Crim. P. 11(c)(1)(A) and (c)(1)(B) plea agreement to conspiracy to commit wire fraud, wire fraud, bank fraud, and aggravated identity theft. *Dkt. 289.* He also admitted to the supervised release violation filed in his 2013 fraud case. *United States v. Hicks*, 13-CR-0079 JD.

The United States respectfully submits this Sentencing Memorandum with a recommendation that the Court sentence defendant Hicks to a term of imprisonment of 110 months, comprised of 100 months for the charges in this case, and 10 consecutive months for the violation of his terms of supervised release, all to be followed by three years of supervised release (including 10-months of home confinement), and restitution in the amount of $1,904,988.79. The United States also asks that the Court enter a forfeiture order in accordance with the parties' agreement and as explained below.

U.S. SENTENCING MEMORANDUM          1
20 CR-0108 JD

## II. BACKGROUND AND OFFENSE CONDUCT

### A. Hicks' Career in Fraud

Mark Hicks' criminal history dates back to his juvenile days. At 20, he was arrested for bank fraud and sentenced six months in jail. *PSR* ¶ 57. Less than two years later he was arrested, convicted, and sentenced to 32 months in prison for Get Credit/Use Other's ID. *PSR* ¶ 58. He was on probation for that offense when he was again arrested, this time for False Information to Law Enforcement. *PSR* ¶ 59. One year later, in 2008, he was arrested yet again, this time charged with being a Violent Felon in Possession of a Firearm. *PSR* ¶ 60.

None of these arrests or convictions deterred Hicks, and from 2008 through November 2012, Hicks participated in a complex, multi-defendant scheme to defraud MoneyGram and USAA Federal Savings. *PSR* ¶ 61. Employing the same *modus operandi* he would use in this case, in the USAA and MoneyGram fraud Hicks and his co-conspirators obtained personal identifying information of his victims, made telephone calls to the bank impersonating them, and, working with co-conspirators, obtained fraudulent proceeds from the victims. *Id.* He was arrested in 2013. Despite this arrest, Hicks continued to engage in sophisticated fraud schemes. In 2014, he was arrested and charged with Grand Theft and Felon/Addict Possessing a Firearm. *PSR* ¶ 62. According to the PSR, Hicks would hack into Federal Express's package tracking system, and was rerouting packages, where he had co-conspirators pick them up. *Id.* Hicks was observed picking up one of the packages from his co-conspirators. *Id.* In April 2015, the Honorable Phyllis J. Hamilton sentenced Hicks to 39 months in prison for the MoneyGram and USAA fraud, and ordered restitution of $258,400. *PSR* ¶ 61. In 2016, he was sentenced to three years in prison on the state charges. *PSR* ¶ 62.

### B. The Charged Mortgage Loan Fraud Scheme

Hicks was released from prison in February 2018, and within months he had hatched the current fraud scheme. By July 2018, Hicks, having obtained personal and financial information for two victims, IT Victim # 1 [J.D.], and IT Victim # 2 [G.C.], set about obtaining fraudulent mortgage loans in the names of both, using fraudulent email accounts, fake Google voice numbers, and fraudulent bank

U.S. SENTENCING MEMORANDUM            2
20 CR-0108 JD

accounts he and others had created in the victims' names. *PSR ¶¶* 24, 25. He applied for a $785,000 mortgage loan in IT Victim #1's name, and a $250,000 fraudulent loan in IT Victim #2's name. *Id.*

As part of this scheme, Hicks began recruiting co-conspirators. Hicks admits that he provided personal information for IT Victim #2 [G.C.] to co-defendant Dionysus Costello, who then recruited co-defendants Susan Arreola-Martin and Leif Skorochod, both homeless at the time and addicted to heroin and methamphetamine, to impersonate victims and sign and notarize fraudulent loan documents. *Id.* Costello and Hicks used Skorochod to impersonate IT Victim #2 [G.C.] & IT Victim #3[ N.S.] (and later Victim #4). *Id.* Arreola-Martin impersonated IT Victim #2's wife. *Id.* Hicks admits that he obtained a fraudulent driver's licenses in the name of IT Victim #2 and IT Victim #3, but with Skorochod and Arreola-Martin's pictures, and using those IDs, along with the fraudulent email, Google Voice, and bank account he and others had created, applied for a $250,000 loan in IT Victim #2's name. *PSR¶* 25.

Hicks would use this *modus operandi* throughout 2018 and 2019 to continue his fraud scheme. Using a fraudulent identification card in IT Victim #3 [N.S.]'s name, but with co-defendant Skorochod's picture, Hicks applied for a loan in IT Victim #3's name, fraudulently obtaining $713,788. *PSR ¶* 26. Hicks spent $6,731 of the funds before the bank discovered the fraud and seized the remaining proceeds. Less than a month later, Hicks orchestrated a $470,609 fraudulent loan in the names of IT Victims #4 [D.R] & #5 [C.R], creating fraudulent email, Google voice, and bank accounts in their names. Hicks, through Costello, used Arreola-Martin and Skorochod again, this time to impersonate IT Theft Victim #4 [D.R.] and IT Theft Victim #5 [C.R.]. They directed Arreola-Martin and Skorochod to meet with a notary, using false identifications and victims' PII that Hicks had obtained. *PSR ¶* 20, 27. That loan was approved, and Hicks admits that he received these fraudulent proceeds, withdrew $94,000 of the funds, and then used additional proceeds to purchase $73,000 in gold coins. *PSR ¶* 27.

In 2019, Hicks' half-brother Demarcus "Smurf" Hicks joined the conspiracy. Demarcus Hicks would work with Costello to obtain fraudulent driver's licenses using the personal information Hicks provided, and would drive Skorochod and Arreola-Martin to meet with notaries. *PSR ¶* 28, 29, 30. Mark Hicks and co-conspirators obtained four additional fraudulent loans: two using stolen personal information of IT Victim #6 [D.A.T.] (fraudulent loans of $290,806 and $241,602), one using stolen

U.S. SENTENCING MEMORANDUM        3
20 CR-0108 JD

personal and financial information and applying for a loan in the names of IT Victims #7 [B.M.] & IT Victim #8 [L.M.] ($301,582), and one by obtaining financial information and applying for a fraudulent loan in the name of IT Victim #9 [D.B.] ($964,513).

### C. The Proceeds of the Fraud

On multiple occasions, Hicks would contact gold dealers by phone, altering his voice and impersonating the victims to order gold bars and gold coins, which he had delivered to a trailer home in Vallejo, California owned by the sister of Demarcus Hicks' spouse. *PSR.* ¶ 30. Hicks ordered $964,000 in gold bars and coins through U.S. Gold Bureau, and at least another $207,500 from Goldline Inc. *PSR* ¶ 28, 30. Hicks also admits to spending parts of the proceeds from the $241,602 loan to Victim #6 via ATM withdrawals and other ATM card purchases. *PSR* ¶ 28. \

Finally, Demarcus Hicks and co-defendant Tyrone Jones (who remains a fugitive) took at least some of the gold coins and bars and exchanged them for cash at a jewelry store. *PSR* ¶ 14. Some of that cash, wrapped in distinctive colored rubber bands, was then deposited into a safe deposit box in the name of Hicks' mother and sister. *PSR* ¶ 14. Law enforcement later searched the safe deposit box and seized $484,920 in cash. Hicks admits that all of it is proceeds of this fraud scheme. *PSR* ¶ 31.

### III. DISCUSSION

#### A. Sentencing Guidelines Calculation and Restitution

The government agrees with Probation's calculation of the Guidelines, with one exception. The government's plea agreement includes a two-point reduction for a Global Disposition, pursuant to U.S.S.G. § 5K2.0(a)(2)(B). Probation takes no position on this reduction. Section 5K2.0(a)(2)(B) provides that "[a] departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."

In this case, in lieu of proceeding to trial, defendants Mark Hicks, Demarcus Hicks, and Dionysius Costello agreed to jointly plead guilty and to pay full restitution. In other words, the defendants agreed to a so-called "wired plea," where if any of three defendants balked, the bargained-for benefit they would receive -- a possible two-level departure under the advisory Guidelines -- would

evaporate. The defendants' wired agreement obviated the need for a complex and relatively lengthy trial, and it increased the chances that the victims of the frauds would be fully compensated for their losses. Such an agreement, while not unprecedented, is uncommon, and thereby satisfies the requirement under Section 5K2.0(a)(2)(B) that the departure apply in "the exceptional case." More importantly, the agreement – if honored by all three defendants -- is a circumstance that the Commission has not identified in the guidelines that is nevertheless relevant to determining the appropriate sentence.

Specifically, the government believes that the Guidelines calculation for defendant Hicks should be as follows:

Count Group 1 (Counts One and Eight)

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | 7 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2: | |
| | Intended Loss in this case was greater than $3,500,000. U.S.S.G. § 2B1.1(b)(1)(J): | +18 |
| | Receipt of $1Million or More From Financial Institutions: U.S.S.G. § 2B1.1(b)(17)(A) | +2 |
| | Possession of 5 or More Means of Identification: U.S.S.G. § 2B1.1(b)(11)(C)(ii) | +2 |
| c. | Adjusted Offense Level: | 29 |

Count Group 2 (Count Twenty)

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | 24 Months Consecutive Sent. |
| b. | Total Number of Units: | 1.0 |
| c. | Combined Adjusted Offense Level: | 29 |
| d. | Acceptance of Responsibility: | -3 |
| e. | Global Disposition U.S.S.G. § 5K2.0(a)(2)(B) | -2 |
| f. | Total Adjusted Offense Level: | 24 |

The government's understanding, based on the criminal history information in the Presentence Report, is that Hicks is a Criminal History Category VI. *PSR ¶ 65.* As a result, according to the

U.S. SENTENCING MEMORANDUM        5
20 CR-0108 JD

government's calculation, the Sentencing Guidelines range is 100 to 125 months, in addition to a mandatory 24-month sentence for his conviction for Count Twenty-One (Aggravated Identity Theft).

In his plea agreement, Hicks agrees to pay restitution in the amount up to $2,082,640. The government calculates that the total actual loss from this fraud scheme was $1,904,988.79 and asks this Court to impose this amount in restitution.

**B.      Legal Standard**

The U.S. Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process, and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991.  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

    (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**C.      Sentencing Recommendation**

    **1.      The nature and circumstance of the offense**

A fraud of this scope and complexity, involving almost two years of continuous criminal activity, multiple victims and seven charged co-conspirators, clearly justifies a significant sentence from the Court.  This was not a one-off, or a single event.  Rather, it was a sophisticated and structured and organized criminal cabal.  It was a complex fraud scheme driven by Hicks, involving significant stolen personal information on the victims, high-quality fraudulent driver's licenses, and a host of fraudulent email, bank, and Google voice accounts.  Hicks and his cohorts managed to deceive over a half-dozen

financial institutions into parting with $2 million, then concealed their ill-gotten gains through the purchase and resale of over a million dollars in gold bars and coins.

Hicks' fraud led to significant losses to the lending institutions, their title insurance companies, and to one set of individual victims. In addition to direct financial losses to four of the victim banks, Fidelity National Title lost $367,388 as part of an insurance claim on the loans to IT Victim #6. *See C, Infra*. Placer Title paid out $306,901 related to fraudulent loans in IT Victim #7 [B.M.] & IT Victim #8 [C.M.]'s names. *Id.* Separately, IT Victim #7 & IT Victim #8 both personally lost $6,412.50 in legal and other costs related to the fraud in their names. *Id.* And Hicks fraud had an additional personal impact on the victims. In a victim impact statement submitted to the Court, IT Victim #1 [J.D.] wrote:

> I spent countless difficult hours on the phones to contact the entities listed to inform them of the fraud and get credit card accounts and loan requests cancelled, and the like. All of this created significant emotional strains to try to say ahead of whomever was fraudulently impersonating me.

IT Victim #6 [D.A.T.], an elderly woman living close to Hicks' mother's house in Oakland whose name was used to take out two loans totaling over $550,000, also wrote a victim impact statement, stating in part:

> The perpetrators had taken a staggering $550,000 loans from my properties. We went back and forth for months with the brokerage firm that provided the loan. I was riddled with anxiety throughout the whole process. I felt deeply violated by these people who have no idea how hard I have worked to achieve everything that I have. . . . my credit report I had worked so very hard to maintain was irreversibly impacted immensely by their actions.

The Court should weigh the nature of this offense, particularly its complex and long-running nature and the impact on the victims, heavily at sentencing. It is a primary factor in justifying a significant custodial sentence for Hicks.

**2.    The History and Characteristics of the Defendant**

Mark Hicks is an unrepentant career criminal. His convictions span back decades, beginning in 1999 when he was only 19. *PSR* ⁋ 56. He has repeatedly offended throughout his life, undeterred by multiple prison sentences, probation, and parole. He is currently a Criminal History VI, reflecting decades of crime.

Hicks' history of fraud shows a defendant committed to a career in crime, undeterred by prior convictions and repeated terms of imprisonment.  Throughout his life, Hicks has demonstrated a willingness to repeatedly turn to crime - with each turn more sophisticated and damaging than the last.

Hicks has also provided no accounting for any of the stolen funds, leaving the government able to trace only the $484,920 in cash seized from a safe deposit box in his mother and sister's name as direct proceeds to Hicks from the fraud.

Finally, Hicks shows no regard for his co-conspirators, his victims, or others.  He recruited Demarcus Hicks and Costello, and he oversaw the recruitment of Arreola-Martin, Skorochod, and Pool.  While each co-defendant bears responsibility for their role in the offense, Hicks also bears responsibility for their recruitment into the scheme.

All of this demands a significant custodial sentence.

### 3. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Mark Hicks has failed to reform in any way following his prior convictions.  Rather, he appears to learn from his past crimes, with each subsequent iteration of the fraud providing him with tools and experience to incorporate into his next fraud scheme.  At age 22, he was arrested for Get Credit/Etc., in violation of California Penal Code Section 530.5, and was sentenced to 32 months in prison.  *PSR* ¶ 58.  Hicks committed a new offense while on Probation.  *Id.*  In 2008, Hicks was charged with Violent Felon Possessing Firearm, and sentenced to 365 days in jail.  *PSR* ¶ 60.  While on Probation, he began the fraud scheme that would result in federal mail, wire, and bank fraud charges in 2013.  *PSR* ¶ 61.  While that case was being prosecuted, Hicks continued to commit fraud, and was arrested again in 2014 and charged in Oakland Superior Court with another sophisticated fraud scheme involving the rerouting of FedEx packages.  *PSR* ¶ 62.  In that case, when he was arrested, a 40 caliber semi-automatic pistol loaded with nine rounds was found in his residence.  *Id.*   For the federal charges, Hicks was sentenced to 39 months imprisonment, and released in February 2018.  He began to reoffend almost immediately.

1    Given this, a significantly longer sentence is warranted to provide specific deterrence
2 against Hicks' future offending.

### 4. The Need to Protect the Public From Future Crimes of the Defendant

Mark Hicks' fraud imposed real costs on his victims. His individual victims had their identities stolen, their credit damaged, and their persons and properties subject to fraudulent loans taken out in their names. The lender victims also suffered real costs, starting with the $1,904,988 that they lost as a result of this fraud. The lenders were forced to accept financial losses themselves; or file insurance claims that had to be paid. As noted above, the individual IT Theft Victims also suffered significant losses - both financial and emotional.

A significant custodial sentence is warranted here in order to protect the public from future crimes of the defendant, which he invariably would commence if he were not incarcerated.

### 5. Need to avoid unwarranted sentence disparities among similarly situated defendants

This case is somewhat unusual in that Hicks, along with Demarcus Hicks and Costello, all agreed to plead guilty in exchange for, among other things, a two-level departure from the advisory Guideline range. The best comparison of similarly situated defendants, therefore, would be to the other defendants in this case. To that end, the chart below lays out the sentences imposed or recommended for Mark Hicks and each of his codefendants:

| Defendant | Statutes of Conviction | Guidelines Range | CHC | Sentence Recommended | Sentence Imposed |
|---|---|---|---|---|---|
| Mark Hicks | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A | 120 to 150 months (probation)<br>100 to 125 months (parties)<br>plus 24 months consecutive | VI | 100 months (plus 10 months for the SVR violation) | TBD |
| Demarcus Hicks | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A | 41 to 51 months (probation)<br>33 to 41 months (parties)<br>plus 24 months consecutive | III | 33 months | TBD |

U.S. SENTENCING MEMORANDUM         9
20 CR-0108 JD

| | | | | | |
|---|---|---|---|---|---|
| Dionysius Costello | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A | 51 to 63 months (probation)<br>41 to 51 months (parties)<br>plus 24 months consecutive | III | 41 months | TBD |
| Susan Arreola-Martin | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A<br>21 U.S.C. § 841 | 51 to 63 months plus 24 months consecutive | III | 78 months | 84 months |
| Leif Skorochod | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A | 41 to 51 months plus 24 months consecutive | III | 18 months (with cooperation) | 14.5 months |
| Christopher Pool | 18 U.S.C. § 1349<br>18 U.S.C. § 1344<br>18 U.S.C. § 1028A | 37 to 46 months plus 24 months consecutive | VI | 18 months (with cooperation) | 15 months |

As the chart demonstrates, a sentence of 100 months for Hicks (plus ten months for his supervised release violation) does not create an unwarranted disparity with his codefendants. Mark Hicks was the mastermind of the scheme, and was involved from the beginning until the end. He also undoubtedly benefitted the most from the fraud. All of the proceeds recovered came from a safe deposit box he controlled. Hicks also has, by far, the most significant criminal history of the defendants.

In contrast, Costello and Demarcus Hicks were not the masterminds of the scheme, and played no role in obtaining victim information, creating fraudulent bank, email and phone accounts, or interacting with the lenders and banks. With both Costello and Demarcus Hicks were facilitators who managed the low-level workers, co-defendants Pool, Skorochod, and Arreola-Martin, their involvement in the fraud was far more limited than that of Hicks. As to the other co-defendants, Arreola-Martin's sentence was driven less by her important but yet low-level role in the fraud and more by the commission of a drug offense while on pretrial release that contributed to the death of her granddaughter. Pool and Skorochod both cooperated with the government. Given these facts, a sentence of 110 months for Mark Hicks is sufficient but not greater then necessary to fulfill the purposes of sentencing, including avoiding an unwarranted disparity with his codefendants.

**D.     Restitution**

In the plea agreement, Hicks agreed to pay restitution in an amount no less than $2,082,640. Since the parties reached that agreement, the United States has refined the restitution mount, and asks

that the Court impose a restitution order in the amount of $1,904,988.79 to the following victims in the following amounts:

| Name of payee | Restitution | Defendants Responsible |
|---|---|---|
| B.M and L.M. | $6412.50 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin Christopher Pool |
| California Mortgage Advisors 4304 Redwood Highway Ste 100 San Rafael CA 94903 | $6019.50 | Mark Hicks, Demarcus Hicks, Dionysius Costello Leif Skorochod |
| Coast to Coast Lending Group, Inc. 27129 Calle Arroyo, Suite 1801 San Juan Capistrano CA | $35,000.00 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin Leif Skorochod |
| MAE Capital Mortgage Inc. 4940 Pacific Street Suite A Rocklin CA 95677 | $6600.00 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin Christopher Pool |
| Charger Funding 1106 2d Street #411 Encinitas CA 92024 | $6875.00 | Mark Hicks, Demarcus Hicks, Dionysius Costello |
| Fidelity National Title Group 2533 North 117th Avenue Omaha, NE 68164-3679 | $367,388.59 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin |
| Placer Title Company 7643 North Ingram Avenue Fresno, California 93711 | $306,901.94 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin Christopher Pool |
| Real Advantage Title Insurance Company 1551 N. Tustin Ave. Suite 300 Santa Ana, CA 92705 | $94,818.55 | Mark Hicks, Demarcus Hicks, Dionysius Costello Susan Arreola-Martin Leif Skorochod |
| First American Title Insurance Company 5 First American Way 2nd floor Santa Ana, CA 92707-5913 | $1,074,972.71 | Mark Hicks, Demarcus Hicks, Dionysius Costello |
| **Total** | **$1,904,988.79** | |

U.S. SENTENCING MEMORANDUM            11
20 CR-0108 JD

**E.     Forfeiture**

Pursuant to the Plea Agreement, United States asks that the Court order that the defendant's interest in the following property be forfeited to the United States:

- Gold bars and coins worth $552,370 (as of February 7, 2022), that were obtained by the FBI as part of this investigation on November 19, 2020, from H. Bee Jewelers and are now in FBI custody;
- Cash in the amount of $484,920 seized from safe deposit box number 2814A at Wells Fargo Bank as part of this investigation.

## IV.     CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence defendant Mark Hicks to a sentence of 110 months. This sentence is comprised of 100 months' imprisonment in this case, to be followed by three years of Supervised Release, along with an order of restitution for $1,904,988.79, and forfeiture of the gold bars and coins, and cash, as specified in the defendant's plea agreement. The government recommends that the Court impose an additional consecutive sentence of 10 months of incarceration, followed by three years of supervised release that includes 10 months of home confinement, for Hicks' violation of his terms of probation in his 2013 case.

DATED: August 29, 2022                                      Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*/s/ David J. Ward*
DAVID J. WARD
BARBARA J. VALLIERE
Assistant United States Attorneys